| | |
|---|---|
| JOHN CLORITE,<br><br>Plaintiff,<br><br>v.<br><br>SOMERSET ACCESS TELEVISION, INC.<br>and THOMAS C. NORTON,<br><br>Defendants. | Civil Action No. 14-10399-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                                            **December 9, 2014**

### I. Introduction

Plaintiff John Clorite ("Clorite") has filed this lawsuit against Defendants Somerset Access Television, Inc. ("SATV") and Thomas C. Norton ("Norton"), alleging retaliation pursuant to Mass. Gen. L. c. 151B (Count I) (against both Defendants), retaliation pursuant to the Massachusetts Equal Rights Act, Mass. Gen. L. c. 93, § 102 ("MERA") (Count II) (against both Defendants), defamation (Count III) (against both Defendants), interference with advantageous business or contractual relationships (Count IV) (against Norton only), intentional infliction of emotional distress (Count V) (against both Defendants), violation of free speech rights under the First Amendment to the United States Constitution and Article 16 of the Massachusetts Declaration of Rights (Count VI) (against SATV only) and retaliation under 42 U.S.C. § 1981 (Count VII) (against both Defendants). First Amended Complaint, D. 14. Defendants have now

1

moved to dismiss, D. 17, and also to strike portions of the amended complaint, D. 27. For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART Defendants' motion to dismiss and DENIES Defendants' motion to strike.

## II. Standard of Review

This Court determines, in considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), whether the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011)). Though "the plaintiff need not demonstrate [he] is likely to prevail" at this stage, he must show that his "claims are facially plausible." García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (citation omitted). A complaint must include facts sufficient to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). First, the Court must distinguish between factual and conclusory legal allegations in the complaint. Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012). Second, taking the plaintiff's allegations as true, the Court must draw "the reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). "In determining whether a [pleading] crosses the plausibility threshold, the reviewing court [must] draw on its judicial experience and common sense . . . . This context-specific inquiry does not demand 'a high degree of factual specificity." García–Catalán, 734 F.3d at 103 (internal citations and quotations omitted).

## III. Factual Background

This summary is drawn from the factual allegations in the amended complaint. D. 14. Clorite is a resident of Somerset with training as a broadcast operations engineer. Id. ¶¶ 5, 6. He served as the chairperson of the negotiating committee which advocated for the creation of

SATV.  Id. ¶ 8.  In November 2004, the Somerset Board of Selectmen created the station and appointed Clorite to SATV's board of directors as its representative.  Id. ¶¶ 9-10.

SATV's operations are overseen by the board of directors.  Id. ¶ 17.  SATV employs individuals to record local government civic activities and events, edit footage, broadcast local programming, organize and present workshops on video production and editing, maintain the SATV facility and document its activities, among other activities.  Id. ¶ 19.  During the time Clorite served as a board member, he also provided services to SATV for compensation, including recording and production services.  Id. ¶ 22.[1]

Clorite alleges that in January 2010 he learned that Norton, SATV's president, was sexually harassing SATV's executive director.  Id. ¶ 24.  Later that month, Clorite, on the executive director's behalf, sent a letter to Norton requesting cessation of the harassment and informing Norton that such behavior could create a sexually hostile working environment and expose SATV's board of directors to legal liability.  Id. ¶¶ 26, 27.  Clorite alleges that at some point after he sent the letter, Norton told the executive director that she would be fired if she employed Clorite for any SATV production or recording jobs.  Id. ¶ 55.  In April 2011, the executive director filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") alleging sexual harassment against SATV and Norton.  Id. ¶ 28.  Clorite assisted the

---

[1] Defendants have moved to strike paragraph 22 of Clorite's amended complaint because Clorite altered a paragraph in which he previously alleged that he provided services to SATV "without compensation," to "for compensation." D. 27.  At this juncture, "[a]n amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader." InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003).  Given that Clorite altered his complaint "prior to the issuance of *any* substantive ruling addressed to the original complaint," id. (emphasis in original), it cannot be said that this specific change was to his "unfair advantage" given the contours of this Court's ruling and that the Court must assume the truth of these allegations to resolve this motion to dismiss, the Court DENIES Defendants' motion to strike, D. 27.

MCAD in its investigation and the SATV board of directors was aware of his cooperation. Id. ¶¶ 29-31.

In July 2011, SATV's board of directors notified Clorite that they planned to hold a special meeting later that month to discuss the sexual harassment. Id. ¶ 32. The board also notified Clorite that he was not allowed to attend and would be removed should he attempt to do so. Id. The board voted to terminate the executive director, effective immediately, and to remove Clorite from his position on the board at its next formal meeting, held in May 2012 . Id. ¶¶ 33-34. Clorite was then formally removed at the May 2012 meeting. Id. ¶ 34.

Clorite alleges that SATV has refused to broadcast his content since receiving his letter. Id. ¶ 35. He further alleges that Norton and SATV have engaged in a pattern of false, negative and critical public statements about his professional skills. Id. ¶ 36. Clorite also contends Norton has maligned his professional ability to officials and residents of Somerset, calling his work "not up to [SATV] standards" and his equipment "substandard." Id. ¶ 37. Clorite alleges these statements negatively affected Clorite's professional relationship with Diman Regional Vocational-Technical High School ("Diman"), for which he had videotaped events during the previous seven years. Id. ¶¶ 38-41. Specifically, Clorite alleges that, in or about 2012, Norton called the superintendent of Diman and stated Clorite's video equipment was substandard, resulting in Diman declining Clorite's further services. Id. ¶¶ 44-48.

In January 2013, the Somerset Economic Development Committee asked Clorite to record a meeting. Id. ¶ 50. Clorite alleges that after he arrived and set up his equipment, he received a telephone call from an agent of SATV who told him that SATV had the exclusive right to tape the meeting. Id. ¶¶ 51-52. Shortly thereafter, SATV's agent arrived and disassembled Clorite's video equipment. Id. ¶ 52. In May 2013, Clorite alleges that an

4

individual acting as an agent of SATV told a member of the Board of Selectmen that Clorite was "useless," or words to that effect, and that his video equipment was substandard. Id. ¶ 54. In December 2013, Norton allegedly appeared at a public meeting of the Somerset Board of Selectmen (a meeting broadcast throughout Somerset by SATV) and made derogatory comments about Clorite's professional skills and his character and fitness to serve the town. Id. ¶¶ 56-57.

## IV. Procedural History

Clorite filed this action in Bristol Superior Court on January 23, 2014. D. 1-3. Defendants removed the case to this Court on February 24, 2014. D. 1. On March 24, 2014, Clorite filed his first amended complaint. D. 14. Defendants moved to dismiss, D. 17, or in the alternative, for summary judgment as to Count I, the Mass. Gen. L. c. 151B retaliation claim. D. 18-20. Defendants also moved to strike a portion of the amended complaint. D. 27. The Court heard the parties on the pending motions on September 17, 2014 and took these matters under advisement. D. 34.

## V. Discussion

At the outset, the Court notes Defendants have moved for summary judgment as to Count I, the Mass Gen. L. c. 151B claim, on the basis that Clorite is not an employee of SATV and that SATV lacked the requisite number of employees to be considered an employer under the statutes. D. 17. Pursuant to Fed. R. Civ. P. 56, Defendants filed a statement of undisputed facts and supporting affidavits, D. 18-20, supporting their motion as to Count I. Clorite's complaint does not specify under which subsection of § 4 he seeks relief, although Count I is labeled "retaliation." Defendants' summary judgment motion, however, addresses only so much of a claim under § 4 that falls under § 4(1) or so much as § 4(4) that may apply to an employer-employee relationship. Mass. Gen. L. c. 151B § 4(1) (prohibiting discrimination by an

5

"employer"), § 4(4) (prohibiting discrimination by an "employer," but also by "any person"). As discussed further below, however, since Clorite has stated, at a minimum, a c. 151B claim under § 4(4), prohibiting retaliation by "any person" against "any person," the Court declines to dismiss this claim.

That is, to the extent that Defendants claim that Clorite was not an employee and that they have fewer than the requisite number of employees to subject them to liability under § 4(4), such contentions, which are contrary to the allegation in the complaint, D. 14 ¶ 21, are not a defense to a § 4(4) claim which may be against "any person." Mass. Gen. L. c. 151B, § 4(4).

### A. Retaliation under Mass. Gen. L. c. 151B (Count I, SATV and Norton)

In Count I, Clorite cites § 4 of Mass. Gen. L. c. 151B (in addition to § 9, the damages provision) for his claim of unlawful retaliation under Mass. Gen. L. c. 151B. Although Defendants contend that Clorite is not an employee and that SATV is not an employer for the purposes of the c. 151B, as discussed above, § 4(4) provides it is unlawful:

> [f]or any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.

Mass. Gen. L. c. 151B, § 4(4). The term "person" includes "individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, receivers, and the commonwealth and all political subdivisions, boards, and commissions thereof." Id. § 1(1). "In neither case does [§ 4(4) or § 4(4A)] expressly require that an employer-employee relationship exist at the time of the wrongful conduct, or at any other time." Psy-Ed Corp. v. Klein, 459 Mass. 697, 708 (2011). "In light of [] 151B's broad remedial purposes, it would be an error to imply such a limitation where the statutory language does not require it." Id.; see Lopez v. Commonwealth, 463 Mass. 696, 706 (2012) (explaining that "[u]nlike § 4(1), which by its

6

terms prohibits discrimination by employers, the division need not be an employer to be subject to an interference claim under § 4(4A)," employing the same language as § 4(4)).

To succeed on a retaliation claim under § 4(4), Clorite must prove "(1) [h]e engaged in protected activity; (2) [he] suffered some materially adverse action; and (3) the adverse action was causally linked to [his] protected activity." Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007) (citation omitted). Clorite must prove that the materially adverse action was an "adverse employment action." Id. (citing Mole v. Univ. of Mass., 442 Mass. 582, 591 & n.14 (2004)).

"[C]omplaining to management or filing an internal complaint of harassment, or meeting with co-workers to discuss how to stop sexual harassment in the workplace, can trigger the protections of c. 151B." Ritchie v. Dep't Of State Police, 60 Mass. App. Ct. 655, 664-65 (2004) (internal quotation omitted). Regarding this first element, Clorite alleges that SATV and Norton received his letter protesting the alleged sexual harassment of SATV's executive director and that they were aware of Clorite's participation in the subsequent MCAD investigation, D. 14 ¶¶ 26-31, reflecting actions that fall within the ambit of c. 151B. See Mole, 442 Mass. at 591 n.13 (explaining that "[f]or purposes of a claim under G.L. c. 151B, § 4(4), a plaintiff has engaged in protected activity if 'he has opposed any practices forbidden under this chapter or . . . has filed a complaint, testified or assisted in any proceeding under [M. G. L. c. 151B, § 5]'"). Clorite has plausibly alleged he engaged in protected activity.

Next, Clorite must allege adverse employment action causally linked to his protected activity. "Under G.L. c. 151B, § 4(4), adverse actions consist of a defendant's action to discharge, expel or otherwise discriminate against the plaintiff." Id. at 592 n.14 (internal quotation marks omitted). The First Circuit has explained that § 4(4)'s "or otherwise

discriminate against" language "should be read as applying as broadly as the similar language in Title VII's [retaliation] provision," which does not require that the retaliation occur within the workplace to be actionable. Dixon, 504 F.3d at 82. The court also noted that § 4(4) should be broadly constructed in part because "or otherwise discriminate" "applies equally to individuals, who can neither discharge nor expel." Id. Here, upon receipt of Clorite's letter and after his participation in the MCAD investigation, SATV allegedly refused to air Clorite's content and the Board voted to remove him from his position. D. 14 ¶¶ 33-35. As to Norton, Clorite alleges that on the heels of his letter and cooperation in the MCAD investigation, Norton made derogatory comments to Diman and told the SATV Executive Director not to employ his services, and that such actions lead to less work for him. Id. ¶¶ 45, 47, 55. Clorite has plausibly alleged an adverse action affecting his employment, as required under § 4(4). The Court concludes that these facts sufficiently state a claim for retaliation under c. 151B.

Accordingly, the Court DENIES Defendants' motion to dismiss Clorite's Mass. Gen. L. c. 151B claim (Count I) and DENIES Defendants' motion for summary judgment as to this count.

**B.     Retaliation under Mass. Gen. L. c. 93, § 102 (Count II, SATV and Norton)**

As Clorite's counsel recognized at the hearing, because the Court will allow Clorite's 151B claim to proceed, his claims under Mass. Gen. L. c. 93, § 102 must necessarily be dismissed. "Where remedies under G.L. c. 151B are or were available to a complainant, those remedies are exclusive, preempting the joining of parallel MERA claims." Lopez, 463 Mass. at 715 (citation and internal quotation omitted); see Ray v. Ropes & Gray LLP, 961 F. Supp. 2d 344, 360 (D. Mass. 2013) (allowing summary judgment as to MERA claim because "where chapter 151B is applicable, a plaintiff may not pursue a claim under MERA"); Flipp v. Town of

Rockland, 613 F. Supp. 2d 141, 146 (D. Mass. 2009) (granting summary judgment for defendant on MERA claim because it was "preempted by chapter 151B"); Charland v. Muzi Motors, Inc., 417 Mass. 580, 586 (1994) (dismissing MERA claim because "G.L. c. 151B provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections").

Accordingly, the Court ALLOWS Defendants' motion to dismiss Clorite's Mass. Gen. L. c. 93, § 102 claim, Count II.

### C. Defamation (Count III, SATV and Norton)

Defendants correctly note that the statute of limitations for a claim of defamation is three years. Mass. Gen. L. c. 260, § 4. The general rule is that the accrual period begins upon publication of the defamatory statement. Harrington v. Costello, 467 Mass. 720, 725 (2014). "A statement is published when it is communicated to a third party. Id. Where Clorite commenced this action on January 23, 2014, the Court must determine whether any of the allegedly defamatory statements by Defendants were published after January 23, 2011. Clorite alleges that "[o]n or about December 4, 2013, [] Norton appeared at a public meeting of the Somerset Board of Selectmen and made derogatory comments against Mr. Clorite and his professional capabilities and skills as a videographer, as well as against his character and fitness to serve the Town of Somerset, to the members of the Somerset Board of Selectmen and to members of the public then present." D. 14 ¶ 56. Clorite also alleges that Norton made false statements to community members that he "was incompetent as a videographer; that he possessed and used only outdated, low quality videography equipment; and that he was uncooperative with co-workers." Id. ¶ 86. Clorite further contends that in May 2013 a representative of SATV falsely told a member of the Somerset Board of Selectmen that Clorite was "useless" and that his

9

equipment was "substandard and/or out of date." Id. ¶ 54. These are not, as Defendants contend, conclusory statements, but factual allegations, that even if hotly disputed, provide a factual basis for Clorite's defamation claim.

> To state a claim for defamation, Clorite must plausibly allege:
>
> (1) that [t]he defendant made a statement, concerning the plaintiff, to a third party; (2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; (3) that [t]he defendant was at fault in making the statement; and (4) that [t]he statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss.

Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (citation and internal quotation marks omitted). Statements that "may prejudice the plaintiff's profession or business" are one of the categories of statements that "are actionable without proof of economic loss." Ravnikar v. Bogojavlensky, 438 Mass. 627, 630 (2003). However, "neither true statements nor 'pure' expressions of opinion, meaning those that do not imply the existence of undisclosed facts, are actionable." Piccone v. Bartels, No. 11-10143-MLW, 2014 WL 4180804, at *1 (D. Mass. Aug. 25, 2014) (applying Massachusetts law). Whether a communication is reasonably susceptible to a defamatory meaning is a question of law, and "this interpretation requires that the court examine the statement in its totality in the context in which it was uttered or published." Foley v. Lowell Sun Pub. Co., 404 Mass. 9, 11 (1989) (citation and internal quotation marks omitted).

Statements regarding Clorite's professional ability, if made falsely and based on allegations that may be factually refuted, state a claim. As to the first element, Clorite alleges that Norton and SATV representatives maligned his professional skills to third parties, in particular telling the Somerset Board of Selectmen and the superintendent of Diman, falsely, that his videography equipment was "substandard." D. 14 ¶ 37, 45, 54, 86. Considering defamatory meaning as to the second element, these statements are reasonably susceptible to a defamatory

meaning because they speak to his professional ability, which would tend to injure his reputation. Regarding the third element, Clorite has plausibly alleged that Defendants made the statements. Finally, Clorite alleges the statements negatively impacted his business, which is actionable even absent proof of economic loss. Ravnikar, 438 Mass. at 630. To the extent Defendants also contend that Clorite's claim cannot succeed because the alleged statement did not impair his standing in the community based on his later engagement as a broadcast engineer even "after many of the alleged comments were made," D. 18 at 14-15, the complaint nevertheless alleges that Clorite suffered reputational harm as a result of the defamatory statements, and references to such work after the allegedly defamatory statements were made does not defeat the plausibility of Clorite's allegations. The Court concludes Clorite has alleged sufficient facts for a defamation claim.

Accordingly, the Court DENIES Defendants' motion to dismiss Clorite's defamation claim, Count III.

### D. Interference with Advantageous Business or Contractual Relationship (Count IV, Norton)

To state a claim for interference with an advantageous business or contractual relationship, Clorite must allege that "(1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260 (2007).

Although Clorite's complaint alleges that Norton interfered with his relationship with SATV and with Diman, as a preliminary matter, the Court notes that a party cannot be held liable for tortious interference with its own relationship. See Riseman v. Orion Research Inc., 394

Mass. 311, 314 (1985) (affirming summary judgment because defendant could not be liable for interference with its own relationship). Norton cannot be held liable for interference with Clorite's relationship with SATV unless Clorite can establish that Norton was acting individually and not on behalf of SATV. See Nasson v. Van Winkle, No. 91-11823-WF, 1994 WL 175049, at *7 (D. Mass. Apr. 19, 1994) (denying motion to dismiss because "if [the plaintiff] can establish that [the defendant], acting individually rather than on behalf of [the parent entity], improperly interfered with [the plaintiff's] contractual rights with [the entity], [the defendant] may be held liable" on a claim for interference with contractual relations). The latter showing is not foreclosed by the allegations made here in the amended complaint. Moreover, Clorite alleges he provided videography services to both SATV and Diman over a number of years, D. 14 ¶ 22, 39-40, which is satisfactory as "[a]n 'advantageous relation' is a 'contemplated contract' or prospective business relationship." Buster v. George W. Moore, Inc., 438 Mass. 635, 653 n.22 (2003) (citation omitted).

As to the second element, Clorite alleges that Norton was aware of these relationships and knowingly caused them to end. Id. ¶ 43-47, 60. The allegation that Norton "knew or should have known of the advantageous business and/or contractual relationships which existed between Mr. Clorite and defendant S.A.T.[V.] and between Mr. Clorite and the administration of Diman" is not conclusory, as Defendants argue, where it is a fair inference from the allegations in the amended complaint that Clorite had done work for Diman over the seven previous years and such work was broadcast over SATV, where Norton served as president. D. 14 ¶¶ 41, 42, 99, 100. Clorite further alleges that Norton retaliated against him because of his support of and participation in the executive director's sexual harassment investigation, id. ¶ 55, 59, 101, which connotes not only such intentional action, but actions based on improper motive (namely, as

12

previously discussed, retaliation after Clorite's legally protected conduct). Finally, Clorite alleges he suffered harm as a result of these actions, id. ¶ 48, 103-05, namely, an adverse effect on his business with Diman and SATV that lead to less work.

Accordingly, the Court DENIES Norton's motion to dismiss Clorite's claim for interference with an advantageous business relationship, Count IV.

### E. <u>Intentional Infliction of Emotional Distress (Count V, SATV and Norton)</u>

In Count V, Clorite asserts that SATV and Norton intended to inflict emotional injury and/or harm upon him, or that they knew or should have known that such emotional injury or harm was the likely result of their actions. D. 14 ¶¶ 106-18. To state a claim for intentional infliction of emotion distress, Clorite must allege:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of [the] conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

<u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir. 1996) (quoting <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 144-45 (1976)) (affirming dismissal of claim for intentional infliction of emotional distress). Clorite alleges that SATV's actions, namely banning him from a board meeting and later removing him from the board altogether, coupled with the critical and derogatory statements against him by Norton and SATV agents, constitute intentional infliction of emotional distress. D. 14 ¶¶ 116-117. These allegations include that an SATV agent told a member of the Somerset Board of Selectmen that Clorite was "useless" and that his equipment was substandard, D. 14 ¶ 54, and that Norton appeared at a public meeting of the Somerset Board of Selectmen, on air, and made "derogatory comments against Mr. Clorite and his professional

13

capabilities and skills as a videographer, as well as against his character and fitness to serve the Town of Somerset." D. 14 ¶ 56.

"The standard for making a claim of intentional infliction of emotional distress is very high." Polay v. McMahon, 468 Mass. 379, 385 (2014) (quoting Doyle, 103 F.3d at 195) (affirming dismissal of claim for intentional infliction of emotional distress where a single verbal attack coupled with installation of cameras pointed at the plaintiff's property was merely insulting and threatening and did not establish extreme and outrageous conduct); see also Beecy v. Pucciarelli, 387 Mass. 589, 596 (1982) (affirming dismissal of intentional infliction of emotional distress claim when an attorney mistakenly pursued a collection action against plaintiffs because conduct was not "extreme and outrageous," "beyond all possible bounds of decency" and "utterly intolerable in a civilized community").

It is not enough to allege "that the defendant has acted with an intent which is tortious or even criminal . . . or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort," and while Defendants' actions may have been upsetting, they were not beyond all realms of decency. See Roman v. Trustees of Tufts Coll., 461 Mass. 707, 718 (2012) (upholding summary judgment because statements dismissive of veterinarian's professional conduct made by other veterinary professionals were insufficient to state a claim for intentional infliction of emotional distress). Without minimizing what appears to be an upsetting situation, the Court cannot conclude Clorite's allegations rise to the level necessary to sustain a claim for intentional infliction of emotional distress.

Accordingly, the Court ALLOWS Defendants' motion to dismiss Clorite's claim for intentional infliction of emotional distress, Count V.

## F. Freedom of Expression (Count VI, SATV)

Clorite alleges a violation of the First Amendment and Article 16 of the Massachusetts Declaration of Rights. D. 14 ¶ 120. "The Mass. Decl. of Rights is generally coextensive with the federal constitution when it comes to the freedom of expression, and thus a breach of the latter constitutes a breach of the former." Flaherty v. Knapik, 999 F. Supp. 2d 323, 332 (D. Mass. 2014). To state a claim, Clorite must plausibly allege: (1) that he "engaged in constitutionally protected conduct;" (2) that he "was subjected to an adverse action by the defendant" and (3) that "the protected conduct was a substantial or motivating factor in the adverse action." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012). The Court concludes that for the reasons stated above, Clorite has stated a claim in Count VI.

Defendants' challenge to this claim focuses on whether SATV may be considered a "state actor" for the purposes of this claim. In Demarest v. Athol/Orange Cmty. Television, Inc., 188 F. Supp. 2d 82, 91 (D. Mass. 2002), the court, in granting a motion for a preliminary injunction, determined it was "highly probable" that a public-access channel would be considered a state actor. The court applied the three factors in Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 399 (1995), which held Amtrak was a state actor because (1) the government created the corporation, (2) "for the furtherance of governmental objectives," and (3) "retain[ed] for itself permanent authority to appoint a majority of the directors." Id. The Demarest court determined the public-access channel was likely a state actor because (1) it was originally created by the town of Athol, (2) to serve government objectives and (3) the town's Board of Selectmen retained the authority "to appoint *all* —not just a majority—of the members of the 'Access Group,' which manage[ed] and operate[ed]" the station. Id. at 91 (emphasis in original). Similarly, Clorite alleges here that SATV was "created by the Somerset Board of Selectmen,"

"for a public purpose" and that the Somerset Board of Selectmen "retained sufficient control over directors' appointments and funding." Id. ¶ 126. Clorite's opposition explains, "the Board retained appointment authority over some of the seats." D. 21 at 19.

That is, whether Clorite has alleged that SATV is a state actor for the purposes of his claim in Count VI, turns upon what degree of control the town retained over SATV. In Barrios-Velázquez v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico, 84 F.3d 487, 492 (1st Cir. 1996), the First Circuit considered whether a Puerto Rican labor organization, AAELA, was an arm of the Puerto Rican government. The court "focused on the degree of control" and declined to deem AEELA a state actor because the government of Puerto Rico had no power to appoint any AEELA directors, but also noted that the government did not subsidize AEELA's losses, unlike in Lebron. Id. (discussing Lebron). Here, the town of Somerset retains the ability to appoint at least some members of the SATV board. D. 21 at 19. It is unclear whether Somerset subsidizes SATV's losses, although the complaint states SATV "retained sufficient control over directors' appointments and funding." D. 14 ¶ 126.

Here, Clorite's allegations in the amended complaint are sufficient to allege plausibly that SATV is a state actor, even if it is unclear if, after discovery, he will be able to show that the third element—the degree of control retained by the town—is sufficient. That is, given the focus on the "degree" of control that the government retains, see Barrios-Velázquez, 84 F.3d at 492 (noting that the Supreme Court in Lebron "focused on the degree of control"), the Court concludes that Clorite has at least stated a claim and dismissal, at this juncture, is not compelled.[2]

---

[2] There seems to be some question about whether Clorite's claim under Article 16 of the Massachusetts Declaration of Rights even requires state action. See e.g., Roman v. Trustees of Tufts College, 461 Mass. 707, 713 (2012) (observing that "we have left open the question—and expressed caution in addressing—whether art. 16 itself extends to speech on private property" and noting that "[e]ven if we were to conclude that protections of art. 16 extend to actions of

Accordingly, the Court DENIES SATV's motion to dismiss Count VI.

### G. Retaliation under the Equal Rights Act, 42 U.S.C. § 1981 (Count VII, SATV and Norton)

Clorite does not oppose the dismissal of his claim under 42 U.S.C. § 1981, the Equal Rights Act. D. 21 at 2. Moreover, dismissal is proper because the Equal Rights Act offers relief from racial discrimination and Clorite fails to allege any facts concerning discrimination on this basis. See Fantini v. Salem State Coll., 557 F.3d 22, 33 (1st Cir. 2009) (upholding dismissal of a § 1981 claim when the appellant "failed to allege that she was discriminated [against] because of her race").

Accordingly, the Court ALLOWS Defendants' motion to dismiss Clorite's § 1981 claim, Count VII.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART Defendants' motion to dismiss, D. 17, and DENIES Defendants' motion to strike, D. 27.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

private individuals, any restriction on a private actor's ability to limit a person's free speech rights would necessarily be no more extensive than the restrictions imposed on government actors"). However, given the Court's conclusion that Clorite has sufficiently alleged state action for Count VI under federal law, the Court concludes the same as to the claim under Massachusetts law.